## SMITH v. JACKSON.

### No. 17407.

Court of Appeal of Louisiana. Orleans.

Oct. 21, 1940.

Rehearing Denied Nov. 18, 1940.

T. 'S. Walmsley, of New Orleans, for appellant.

Max Schaumberger and M. C. Scharff, both of New Orleans, for appellee.

McCALEB, Judge.

This is a suit for damages arising out of an intersectional collision which occurred on October 6, 1938, at about nine a. m. on the corner of Milan and South Roman Streets in the City of New Orleans when a Ford automobile driven by the plaintiff, Drew L. Smith, was struck by a Plymouth car owned and operated by the defendant, Harold C. Jackson.

Plaintiff claims that the accident occurred solely through the negligence of the defendant who, it is charged, drove his car from Milan Street into the intersection at an excessive rate of speed and without exercising a proper lookout at a time when plaintiff had preempted the crossing from South Roman Street. It is further charged that the defendant violated the provisions of Article VI, Subsection 9, of the Traffic Ordinance of the City of New Orleans No. 13,702 C.C.S., in failing to bring his car to a full stop before entering the intersection and that he also neglected to accord to plaintiff the right of way granted to the latter by Article VI, Subsection 10(a) of the same ordinance. Plaintiff further avers that, as a result of the collision, his automobile was damaged to the extent of $175; that he is entitled to $100 additional for the loss of use of his car for the period during which it was undergoing repairs and that he suffered personal injuries consisting of general contusions, lacerations and shock for which he should also receive compensation in the sum of $758.

The defendant, in his answer, admits the happening of the accident but denies that he was at fault or that he is responsible to the plaintiff for the consequences thereof. He alleges that, when he approached the intersection from Milan Street, he was driving at a speed not exceeding seven miles per hour; that, before entering the crossing, he looked for traffic on South Roman Street and, seeing none,

he proceeded into the intersection when he noticed for the first time a rapidly moving automobile operated by the plaintiff coming from his right on South Roman Street proceeding in the direction of Canal Street; that he immediately attempted to avoid the accident by swerving to his left but without avail; that his car had preempted the intersection long before plaintiff's automobile reached it and that, after the collision, his car came to a complete stop while the automobile of the plaintiff careened and then ran into a telephone post which stopped its forward movement.

The defendant further averred in the alternative that, should the court find that he was at fault in any particular, then plaintiff was guilty of contributory negligence in that he drove his car into the intersection at a fast rate of speed; in that he did not have his car under control and failed to keep a proper lookout and in that he failed to accord to respondent the right of way to which the latter was entitled as he had preempted the intersection long in advance of the plaintiff.

On the issue thus joined, a trial was had and the district judge, after hearing the evidence submitted by both sides, dismissed the plaintiff's suit with written reasons in which he expressed the conviction that the plaintiff was guilty of contributory negligence which had causal connection with the accident. The plaintiff has prosecuted this appeal from the adverse judgment.

It will be seen from a statement of the case that the questions presented for our determination are chiefly ones of fact.

The accident occurred at the corner of South Roman and Milan Streets in the City of New Orleans. South Roman is a paved two-way street running from Canal Street in the direction of Carrollton Avenue. It intersects Milan Street at right angles. Milan Street, at its intersection with South Roman Street, is a graveled two-way thoroughfare running from the Mississippi River in the direction of Lake Pontchartrain. The plaintiff was driving his automobile down South Roman Street, proceeding in the direction of Canal Street, and the defendant was traveling on Milan Street in the direction of the Mississippi River. When the plaintiff's car traversed the intersection, it was struck on its left side by the front of the defendant's car which was coming over the crossing at approximately the same time. After the impact, plaintiff's car continued forward and to the right and came to rest with its right side against a telephone pole situated on the downtown riverside corner of the intersection. The defendant's car, on the other hand, stopped almost instantly at the point of its contact with the plaintiff's car.

The evidence in the case is practically undisputed with respect to the conditions obtaining on the uptown lakeside corner of the intersection and it reveals that the view afforded to the operator of a vehicle proceeding on either South Roman or Milan Streets in the directions from which the respective vehicles were traveling into the intersection, is obstructed by the presence of a house, trees and shrubbery situated at that corner. In other words, the testimony establishes that a motorist proceeding on South Roman Street at a distance of 50 feet from the intersection, obtains a view of not more than 35 feet into the lakeside roadway of Milan Street and likewise that an operator traveling on Milan Street has no greater span of vision of traffic proceeding in the uptown roadway of South Roman Street.

Plaintiff's version of the accident is that he was approaching the intersection from South Roman Street at a speed not in excess of 20 miles per hour; that, when he arrived at a point 40 or 50 feet from the crossing, he looked to his left for traffic traveling in the lakeside roadway of Milan Street; that, at that point, he had a vision into the Milan Street roadway of about 35 feet; that, upon observing that the way was clear, he continued forward at the same speed and looked to his right for traffic proceeding in the riverside roadway of Milan Street; that, upon making sure that the roadway was clear on both sides, he drove into the intersection and that, just as he reached it, he saw a car coming into it from the lakeside roadway of Milan Street; that this car was only a few feet away from him at the time he saw it; that he tried to avoid the accident by swerving to the right and applying his brakes and that, in spite of this, his car was struck broadside by the front of the oncoming automobile when it reached the middle of the intersection. He further says that, as a result of the collision, his car was knocked forward and to the right into the telephone pole situated on the downtown riverside corner of the crossing.

In addition to his own testimony, plaintiff produced as witnesses on his behalf Maurice Grimes, Henry Tatje, John W.

Mullin and Russell Alongi. The two first named witnesses did not see the accident. They arrived at the scene shortly after it happened and their evidence consists merely of a description of the position of the two automobiles after the impact. On this point, there seems to be no dispute between the parties.

Plaintiff's witness Mullin is a Civil Engineer who made a survey of the intersection of Milan and South Roman Streets after the accident. His testimony is limited to his calculations as to the width of the respective streets and as to the range of vision afforded to operators of vehicles approaching the intersection from either street.

Russell Alongi, a young man 17 years of age, testified that, on the morning in question, he was on his way to school and was standing at the intersection at the time the accident occurred. He says that he saw the plaintiff's car coming down South Roman Street at a speed of about 20 miles per hour and that he likewise observed the defendant's car on Milan Street traveling at a speed of 25 to 30 miles per hour. He states that plaintiff's car was about in the middle of the crossing when it was struck by the defendant's automobile. On cross-examination, this young man's account of the accident was somewhat shaken. It appears from his testimony that he is not at all certain as to where the defendant's car was when he saw it traveling at a speed of about 25 miles per hour and he finally admits that he did not see it until the moment of the collision.

The defendant's account of the occurrence is vastly different from the version given by the plaintiff. He says that he was proceeding out Milan Street at a speed of about six or seven miles per hour; that, just as he got to the intersection of South Roman Street and was preparing to cross it, he saw plaintiff's car, proceeding down South Roman Street at a very fast rate of speed, about 25 feet from the entrance of the crossing; that, in an effort to avert the collision, he attempted to swerve to his left but to no avail as the plaintiff's car continued forward at an unabated speed and that the front of his car came in contact with the left side of the other automobile. He asserts that, when the cars collided, his car stopped immediately and that the plaintiff's car careened toward the right, its forward motion being stopped when its right side collided into the tele-phone pole situated on the downtown riverside corner of the intersection. The defendant admits that he did not stop his car when he reached the intersection, notwithstanding the fact that he did not have a clear vision of traffic proceeding on South Roman Street in the direction of Canal Street.

The statement of the defendant with respect to his movements, as well as those of the plaintiff's car prior to the impact, is fully corroborated by the evidence of Mrs. Lillian Hawley who was a passenger in defendant's automobile at the time of the accident.

■ A careful analysis of the testimony contained in the record has convinced us that the defendant was guilty of negligence. In fact, we find that his statement on the witness stand is ample in itself to show that he was at fault in entering the intersection from Milan Street without first bringing his automobile to a full stop and making sure that there was no traffic near the crossing before he attempted to proceed. His failure in this respect was clearly a violation of Article VI, Subsection 9, of the City Traffic Ordinance, the pertinent part of which provides: "Every operator of a vehicle traveling upon any unpaved street intersecting any paved street shall bring such vehicle to a full stop at the place where such streets meet the prolongation of the nearest property line on such paved street, when the operator's view is obstructed, * * *. An operator's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the streets entering such intersection for a distance of one hundred (100) feet from such intersection."

The defendant concedes in his testimony that the approach to the intersection was obstructed as defined by the above quoted ordinance. In fact, he says that, when he was 25 feet from the corner of South Roman Street, he was unable to see traffic proceeding from uptown on South Roman Street for any appreciable distance. It was therefore his duty, since he was traveling on an unpaved street, to have brought his car to a complete stop before negotiating the intersection.

While we find that the defendant was at fault in the foregoing respect, we are also convinced that the plaintiff was guilty of

such contributory negligence as to bar his recovery. Plaintiff and his witness, Alongi, both fix the speed of the Ford car at 20 miles per hour at the time it entered the intersection. On the other hand, the defendant and his witness, Mrs. Hawley, while refraining from attempting to estimate with exactness the speed at which plaintiff's car was traveling, say that it came into the intersection at a very fast rate. Their statement on this point is confirmed to our satisfaction by the physical facts of the case which show that, after the impact, plaintiff's car careened forward to the right and crashed violently into a telephone pole situated on the downtown riverside corner of the intersection.

Counsel attempts to explain the unusual movements of plaintiff's automobile after the collision by suggesting that the blow administered by the defendant's car was a violent one. But a careful reading of the testimony does not warrant the finding that defendant's car entered the intersection at a fast rate of speed. On the contrary, we think that the estimate of six or seven miles per hour as given by defendant and his witness is fairly accurate.

The district judge, who had an opportunity to see and hear the witnesses, was of the opinion that plaintiff entered the intersection at a fast rate of speed and that his statement that he was traveling at 20 miles per hour was incorrect. We are unable to discern that the court was manifestly wrong in arriving at this conclusion. The supporting testimony of plaintiff's witness Alongi is not impressive when weighed against the evidence tendered by the defendant and the physical facts of the case. A careful consideration of the matter as a whole has satisfied us that the plaintiff came into the intersection at a fast rate of speed without exercising a proper lookout and that this dereliction on his part was a contributing factor to the damage for which he now seeks restitution from the defendant.

Counsel for plaintiff has favored us with an able and complete brief of the law applicable to intersectional collisions and many cases are cited by him in support of his position that, since plaintiff had the right of way, he was entitled to rely upon the belief that the defendant would observe the rules of the road and would not enter the intersection unless he was sure that it was clear of traffic. It is true that a motorist traveling on a favored street has a right, within certain limits, to believe that motorists approaching from a less favored street will respect that right. But this does not give him a license to violate the law on his own part merely because he has the right of way. If the plaintiff was speeding, as was held by the district judge and in which finding we concur, he rendered himself helpless from preventing any accident which might occur at the time he negotiated the intersection. Under such circumstances, his lack of care is not to be condoned by the other party's fault and his dereliction must be adjudged as a contributing factor to the consequence of which he now complains.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.